1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8           FOR THE EASTERN DISTRICT OF CALIFORNIA
9
10   KIM A. LACHAPPELLE,
11                    Petitioner,
12                                              2:07-CV-0836-JLR
13        v.                                   ORDER
14
15   D.G. ADAMS, Warden
16                    Respondent.
17
18        On May 2, 2007, Kim LaChappelle ("Petitioner"), a prisoner in state custody, filed
19   a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Pet.") (Dkt. # 1).  On
20   August 30, 2007, this action was administratively stayed pending exhaustion of state
21   court remedies (Dkt. # 8).  This stay was removed on April 16, 2008 (Dkt # 11).  On June
22   13, 2008, D.G. Adams ("Respondent") filed an Answer to Petition for Writ of Habeas
23
24   Corpus ("Ans.") (Dkt. # 16).  On August 15, 2008, Petitioner filed a Traverse to the
25   Answer ("Traverse") (Dkt. # 22).  For the reasons discussed below, the court DENIES the
26
27   petition as to all claims.
28

ORDER – 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. BACKGROUND

The state appellate court summarized the facts of the case as follows:

On April 11, 2004, defendant's nephew Mark Thibeau, who had just been released from prison, went to defendant's mother's house in Sacramento. [Petitioner] agreed to give him a ride to a family Easter celebration in Orland with a stop in Dunnigan to visit defendant's daughter, Jessica LaChappelle. On the way, they went to Woodland to purchase beer, which they began drinking en route to Dunnigan.

Upon reaching Dunnigan, they saw Jessica driving in the opposite direction. She told them to go to her residence and wait for her. [Petitioner] and Thibeau proceeded to the trailer where Jessica lived with her boyfriend, Ryan Wages.

When they entered, Thibeau asked Wages about the $50 he "was suppose[d] to put on his books" for commissary when Thibeau was incarcerated[1]. Thibeau seemed upset, claiming Wages had lied to him. Thibeau started "smack[ing]" Wages's dog around "to see how far he could push him." To avoid problems, Wages decided to give Thibeau the money. Defendant, however, intercepted the money and said he did not want Thibeau to take it. Thibeau told defendant, "shut up," "be quiet," and "don't interfere." When defendant attempted to put down the money, Thibeau grabbed it and said it was his money and if anybody had a problem, he would be outside.

At that time, Jessica returned home. She noticed that Thibeau had a "mean look" and defendant "was sitting there quiet." Wages told her that Thibeau was upset because he did not put money on Thibeau's books. Jessica told Thibeau she had told Wages not to give him the money.

Thibeau got out of the Ford, leaned against a black El Camino that was across from the Ford, and took off his shirt, revealing a prison gang tattoo on his chest that read, "Sacramaniac." Wages became very intimidated. At Thibeau's request, Wages came over to where Thibeau was standing "[b]ecause [he] figured there would be even more problems had [he] not gone over to [Thibeau]." Thibeau put his arm around Wages's head, kissed him, and repeatedly tapped on his face in an effort to embarrass Wages. Jessica told Thibeau to stop and leave them alone. Defendant, who was somewhere by his truck, also told Thibeau to stop. Thibeau told defendant to, "[s]hut up," shook a beer bottle he was holding, and sprayed the contents on the El Camino and on Jessica. Thibeau then started pushing Jessica away and threatened to pour

---

[1] Thibeau and Wages had been arrested together in regard to a stolen vehicle. Wages was questioned and released.

ORDER – 2

beer all over her if she did not move.  Defendant "became more upset" and told Thibeau "to quit."  Jessica and Wages began walking away.

Thibeau came toward defendant and started "addressing" him. Defendant shot Thibeau in the face from a distance of 8 to 12 feet.[2]  Thibeau brought both hands to his face and dropped to the ground.  Defendant wrapped something around Thibeau's head to stop the bleeding and told Jessica and Wages to call 911.

. . .

Thibeau, who was treated at U.C. Davis by an ophthalmologist, suffered multiple facial injuries.  He had "shotgun pellet[s]" in both eyes and underwent four surgeries to treat the wounds.  Despite these surgeries, Thibeau's vision in both eyes remains "very poor."  It was the ophthalmologist's opinion that "it is very, very unlikely that [Thibeau] would ever recover reading vision."

(Dkt. # 19, Doc. # 4 at 2-5.)  During his April 2004 incarceration at the Yolo County Jail, the jail recorded some of Petitioner's phone calls.  (*Id.* at 6.)  In these calls, he explained the circumstances around the shooting differently.  He explained that Thibeau "was just being an asshole. . . . he grabs Jessie around the head, and Ryan [Wages], both, and then he's squirting them with his beer out of the bottle, and that was all I could take."  (*Id.*)  He also instructed to have his daughter file an assault charge against Thibeau, and his wife to "[w]ork on fuckhead, too. . . .  Make sure he don't put me down. . . . Because it's all up to him, and fuckin' testimony and shit. . . .  Just keep workin' him.  Buy 'em.  Buy 'em.  I don't care."  (*Id.* at 6-7.)

A jury found Petitioner guilty of mayhem (count 2); assault with a firearm (count 3); a felon in possession of a firearm (count 4); and unlawful possession of

---

[2] Petitioner was not allowed to possess a firearm and ammunition because of a 1993 felony conviction.

ORDER – 3

ammunition. (Clerk's Transcript ("CT") at 624-29.) They also found that Petitioner had discharged a firearm causing great bodily injury. (*Id.* at 625.) On February 3, 3005, the trial court sentenced the Petitioner as follows: a 4 year term for mayhem; a 25-years-to-life sentence for the firearm enhancement to run consecutively with the mayhem sentence; a 5-year term for assault with a firearm, which was stayed; and two 16-month sentences for a felon in possession of a firearm and unlawful possession of ammunition to run concurrently with the mayhem sentence. (*Id.* at 724-25.)

On July 20, 2005, Petitioner appealed to the California Court of Appeal, Third Appellate District (Dkt. # 19, Doc. # 1), which denied the Petitioner's appeal in a reasoned decision on January 31, 2006 (Dkt. # 19, Doc # 4). Petitioner filed for review in the California Supreme Court (Dkt. # 19, Doc. # 5), which was denied on April 12, 2006 (Dkt. # 19, Doc. # 6). On July 12, 2006, Petitioner filed Petitions for Writ of Habeas Corpus in both the Yolo County Superior Court (Dkt. #19, Doc. #7), and the California Supreme Court (Dkt. # 19, Doc. # 9). The superior court denied the petition on September 7, 2006, holding that the Petitioner failed to establish a prima facie showing that he was entitled to relief and that the issues should have been raised in a direct appeal. (Dkt. # 19, Doc. # 8.) On January 24, 2007, the California Supreme Court denied the petition with citations to *In re Lindley,* 29 Cal.2d 709 (1947) and *In re Dixon,* 41 Cal.2d 756 (1953). (Dkt # 19, Doc. # 10.)

ORDER – 4

On April 2, 2007, Petitioner filed a second Petition for Writ of Habeas Corpus with the superior court.  (Dkt. # 19, Doc. # 11.)  The court summarily denied the petition as successive or untimely, citing *In re Clark,*  5 Cal.4th 750 (1993).  (Dkt. # 19, Doc. # 12.)  On June 20, 2007, Petitioner filed a Motion for Reconsideration with the superior court.  (Dkt # 19, Doc. # 13.)  The court denied this motion on June 21, 2007.  (Dkt. # 19, Doc. # 14.)  Also on June 20, 2007, Petitioner filed a Petition for Writ of Habeas Corpus with the California Court of Appeal, Third Appellate District.  (Dkt. # 19, Doc. # 15.)  His petition was a verbatim copy of his second petition to the superior court.  (*See* Dkt. # 19, Doc. ## 11, 15.)  The court denied the petition without comment.  (Dkt. # 19, Doc. # 16.)

On September 11, 2007, Petitioner filed a second Writ of Habeas corpus with the California Supreme Court.  (Dkt. # 19, Doc. # 17.)  His Petition was a verbatim copy of his petition filed to the superior court and appellate court.  (*See* Dkt. #19, Doc. ## 11, 15, 17.)  The California Supreme Court denied the petition on March 12, 2008.  (Dkt. # 19, Doc. # 18.)

Petitioner filed this Petition on May 2, 2007.  (Pet. at 1.)  Respondent alleges that claims 5, 11, and 17 are procedurally defaulted and barred from federal review.  (Ans. at 1.)  Respondent does not allege that any claims are unexhausted. In his traverse, Petitioner consolidates and clarifies the "hodgepodge" of his

Petition.  (Traverse at 5).  This process reduces the 18 claims present in his

petition, to 10 claims[3].  (Traverse at 5-6.)

## II. ANALYSIS

*Grounds for Relief*

Petitioner presents the following claims.  To aid analysis, this ORDER will

refer back to the original claim numbers as presented in the petition.  These

numbers are included in the parenthetical after the consolidated claims below:

> *Ineffective assistance of appellate counsel (1, 12);*
> *Ineffective assistance of trial counsel (2, 6, 8, 9, 10);*
> *Denial of right to testify (3);*
> *Confrontation of victim (4, 13, 14);*
> *Jury instructions (5, 11, 15);*
> *Failure to disqualify judge (7);*
> *Insufficiency of the evidence (16);*
> *Cruel and unusual punishment (17);*
> *Cumulative error (18);*
> *Trial court abused its discretion in denying Petitioner's new trial motion (10).*

(Pet. at 5-6HH; Traverse 5-23.)  Of these ten remaining claims, Petitioner cancels

claims relating to disqualifying the judge and cumulative error.  (Traverse at 16,

23.)

*Standard of Review*

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas

---

[3] The traverse describes the reduction from an 17 claims to 8 claims.

corpus filed after the statute's enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (holding AEDPA only applicable to cases filed after statute's enactment).

As Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, Title 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition.  *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006).  Under AEDPA, a party's petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).

In ascertaining clearly established federal law, this court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Lockyer*, 538 U.S. at 71 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Next, this court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  *Id.*  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by

ORDER – 7

[the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13; *see also Lockyer*, 538 U.S. at 73.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.

Although only Supreme Court law is binding on the states, ninth circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).  The court applies this standard to the last reasoned decision by the state court.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

AEDPA requires that we give considerable deference to state court decisions.  The state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  We are bound by a state's interpretation of its own laws.  *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

*Procedural Default*

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v.*

ORDER – 8

*Thompson*, 501 U.S. 722, 729 (1991); *La Crosse v. Kernan*, 244 F.3d 702, 704

(9th Cir. 2001).  "For the procedural default rule to apply, however, the application

of the state procedural rule must provide 'an adequate and independent state law

basis' on which the state court can deny relief."  *Park v. California*, 202 F.3d

1146, 1151 (9th Cir. 2000) (quoting *Coleman*, 501 U.S. at 729-30).  If the court

finds an independent and adequate state procedural ground, "federal habeas review

is barred unless the prisoner can demonstrate cause for the procedural default and

actual prejudice, or demonstrate that the failure to consider the claims will result in

a fundamental miscarriage of justice."  *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th

Cir. 1993); *Coleman*, 501 U.S. at 749; *Park*, 202 F.3d at 1149-50.  The state has

the ultimate burden to show the adequacy of the law.  *Bennett v. Mueller,* 322 F.3d

573, 585-86 (9th Cir. 2003).  If the state meets this burden, the burden shifts to the

petitioner to show examples where the rule has not been consistently applied.  *Id.*

at 586.  The state then has the opportunity to rebut that evidence.  *Id.*  If a state

court invokes multiple procedural-bar rules, but fails to match the rules to the

claims, a federal court is permitted to review the claim if any of the state

procedural bar cases cited is not adequate and independent.  *See Washington v.*

*Cambra,* 208 F.3d 832 (9th Cir. 2000).

Here, the California Supreme Court denied Petitioner's first Habeas petition

with citations to *In re Lindley,* 29 Cal.2d 709 (1947), and *In re Dixon,* 41 Cal.2d

756 (1953).  (Dkt. # 19, Doc. # 10.)  Both of these cases have an independent basis

ORDER – 9

in state law; this court may not examine these claims denied by the California Supreme Court.

The first case, *In re Lindley,* provides that insufficiency of evidence claims may only be considered on direct appeal, not in habeas claims. *Carter v. Giurbino,* 385 F.3d 1194, 1197 (9th Cir. 2004). In *Carter*, the court found *Lindley* to be an independent ground because it "is not intertwined with federal substantive or procedural law." *Id.* at 1197-98. *Carter* also found that "California courts have consistently applied *Lindley* since 1947." *Id.* at 1198. Petitioner alleges that this matter is reviewable by a habeas court because it involves a due process clause violation. (Traverse at 7.) This court dispatches Petitioner's claim because the state has established an independent basis for its decision that is beyond the reach of a federal habeas court. If this court were to reach the problem, it would be an end run around the limitation on direct review. *Coleman,* 501 U.S. at 730-32.

The next case, *In re Dixon* held that habeas corpus is not a substitute for direct appeal and cannot provide relief for matters that should have been raised on a timely appeal from judgment. *Dixon*, 41 Cal.2d at 759.[4] Courts have found the *Dixon* bar independent and adequate. *See Bennett v. Mueller,* 322 F.3d at 581 (finding the *Dixon* bar adequate); *Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1008-

---

[4] *Dixon* also establishes a rule for timeliness of filings; however, that is not at issue in this case.

ORDER – 10

09 (S.D. Cal. 2004) (finding the *Dixon* bar independent and adequate).  Petitioner

does not raise any challenges to the independence or adequacy of *Dixon*.

The state meets its burden to show that cases listed in the postcard denial

are independent and adequate.  Petitioner fails to show that they have been

inconsistently applied.  Petitioner also fails to show any cause or prejudice in

either his Petition or Traverse.  As such, claims 5, 11, and 17 along with any

related claims are procedurally barred and not capable of providing federal habeas

relief.

*Ineffective assistance from trial and appellate counsel*

Petitioner initially presents 13 grounds for claim 1, ineffective assistance of

appellate counsel.  (Pet. at 5-5A.)  Petitioner then proceeds to consolidate claim 12

into this claim providing 14 independent grounds.  (Traverse at 5.)   Petitioner

presents 11 grounds for claim 2, ineffective assistance of trial counsel.  (Pet. at 5.)

Petitioner consolidates claims 6, 8, 9, and 10 into this claim.  Because claim 6 has

12 independent grounds, the consolidated total is 26 grounds for ineffective

assistance from trial counsel.  Many of these ineffective counsel claims arise from

the same set of facts as other claims; these claims will be handled along with the

underlying claim[5].  The remaining claims can be grouped into three categories:

counsel's failure to investigate; counsel's selection of witnesses; and counsel's

---

[5] For example, Claim 3 relates to the denial of Petitioner right to testify.  Claim 2.2 and 6.4 are ineffective assistance from trial counsel by not allowing Petitioner to testify.  Claim 1.2 is that appellate counsel failed to raise that trial counsel prevented Petitioner from testifying.

ORDER – 11

theory of the case.  Petitioner also alleges that appellate counsel failed to raise these shortcomings on appeal.

In order to prevail on his claim of ineffective assistance of counsel, Petitioner must show two things: an unreasonable error and prejudice flowing from that error.

First, Petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  *Id.* at 690.  "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation."  *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986); *see also Strickland,* 446 U.S. at 689 ("[a] court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable assistance").

Second, Petitioner must prove prejudice.  *Strickland,* 466 U.S. at 693.  To demonstrate prejudice, it is necessary to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Here, Petitioner fails to show the unreasonableness of his counsel's omissions; it is not necessary to examine whether these actions caused any

ORDER – 12

prejudice.  Judicial scrutiny must be highly deferential.  It is too easy to conclude that if a defense proved unsuccessful, an omission made by defense counsel was unreasonable.  A fair assessment requires that the distorting effects of hindsight be minimized.  As such, a strong presumption exists that trial counsel's conduct fell within the wide range of professional assistance.  Petitioner fails to demonstrate his attorney's ineffectiveness and fails to satisfy his burden of showing through evidentiary proof of his counsel's purportedly deficient performance.

Petitioner first argues that trial counsel failed to adequately investigate his case.  He presents the following grounds:  1.1 (investigate and present a viable defense); 2.4 (investigate self defense); 2.9 (obtain blood results of victim); 2.10 (interview eye witnesses); 6.7 (interview his daughter); 6.8 (investigate that the victim faked his eye injury and did not attend post surgery appointments); and 10 (seek a continuance to investigate CSI report).  (Pet. at 5-5A, 6F, 6K.)

This portion of Petitioner's claim is not capable of providing Habeas relief.  To prove this type of claim, it is necessary to show what information would have been obtained with further investigation and whether it might have produced a different result at trial.  *See Hamilton v. Vasquez,* 17 F.3d 1149, 1157 (9th Cir. 1994).  In both his petition and traverse, Petitioner fails to identify any information that his counsel failed to identify that would have been identified had she performed more research.  Petitioner merely stands upon his conclusory statement that the outcome "most probably would have differed."  (Traverse at 12.)

ORDER – 13

Petitioner's contention that trial counsel failed to investigate self defense and failed to adequately interview witnesses is without merit.  Trial counsel did present a self-defense theory to the assault with a firearm charge.  (*See* Reporters' Transcript on Appeal ("RT") at 498-504.)  Petitioner fails to identify any additional evidence that trial counsel would have received by interviewing additional parties.

Petitioner states in the ground arising from the "CSI" report, that his trial counsel failed to utilize an investigator or blood expert to testify about blood drops on the El Camino.  (Pet. at 6L.)  Petitioner indicates that this blood drop along with beer splatter "demonstrate[s] where Mark was leaning over the back of the El Camino passenger window where one bottle was found after mark was shot."  (*Id.*)

This contention is without merit.  Detective Glaser of the Yolo County Sheriff's department testified in depth about elements that Petitioner alleges his counsel failed to introduce.  (*See* RT at 295-97.)  First, the detective testified "[t]his is a picture of the black El Camino that was on the property with the blood stain just below the passenger door, also has beer stains."  (*Id.* at 296.)  He then continues the blood droplets were running downward indicating that the person creating the blood drops would have been directly over the vehicle at the time the blood drops were placed.  (*Id.* at 297.)  Yolo County Crime Scene Investigator Stephanie Gill also testified about the presence of the blood drops on the El Camino and the presence of the beer bottle within the El Camino.  (*See id.* at 253-

ORDER – 14

54, 258-59, 261-62.)  During cross examination, defense counsel introduced

testimony about the exact location of the bottle, along with a further description of

El Camino.  (*Id.* at 266-69, 277.)  Trial testimony covered the elements that

Petitioner claims his counsel should have discovered upon further investigation.

As such, this ground is incapable of supporting Petitioner's contention that his trial

counsel failed to adequately investigate the CSI report.

Next, Petitioner's argues that defense counsel should have called his

family members to testify because "a competent attorney understands that many of

his clients lie when they are frightened. . . . But just because a client lies does not

nullify the truth."  (Traverse at 8.)  These grounds are presented in 1.5 (failure to

support defense witness testimony); 2.11 (subpoenaed two witnesses but did not

put them on the stand); 6.1 (subpoenaed niece and daughter but did not testify);

6.3 (did not call witnesses); 6.5 (did not call petitioner's wife and son to testify

about victim character).  (Pet. at 5, 6D.)  This is not persuasive.  Testimony was

introduced from  Petitioner's daughter, Jessica LaChappelle (RT at 101-172) and

Petitioner's daughter's boyfriend, Ryan Wages (*Id.* at 173-236).  These two family

members were the only witnesses to the incident in question.  It is disingenuous to

claim that Petitioner is entitled to relief because these parties were called by the

State rather than Petitioner's own counsel.

The next set of grounds falls within the discretion afforded trial counsel.

Claims 2.7 (beer bottle not argued correctly); 6.6 (did not introduce beer bottle as

ORDER – 15

weapon); 6.9 (did not introduce blood test evidence); 6.12[6] (did not introduce

evidence of victim's prior act of choking another family member); and 10

(improper argument of beer bottle in closing argument) all relate to defense

counsel's theory of the case.  Trial counsel is not obligated to pursue every factual

line of defense when counsel reasonably beliefs that the defendant's interests

would not be advanced.  *Iaea v. Sunn,* 800 F.2d 861, 865 n.4 (9th Cir. 1986).

Petitioner's speculation that the inclusion of other evidence or defense theories

would have changed the outcome is insufficient to support habeas relief.

Petitioner also provides examples of evidence that he thought that would

have been enough for a reasonable trier of fact to come to a different outcome.

Petitioner's wanted the jury to hear the following: (1) the victim had been paroled

that day; (2) the victim had a violent record of assaults and batteries; (3) the victim

was the aggressor and had shoved the Petitioner's daughter; (4) the victim was

intoxicated; and (5) that the victim was "scum" and "got what he had coming."

(Traverse at 9-10.)

This argument is unavailing because testimony to this effect already existed

in the record.  First, the victim's parole officer testified that the victim had been

released from prison that day.  (RT at 457.)  Second, Petitioner's daughter testified

of the victim's violent history.  (*Id.* at 145-47, 159.)  Third, testimony that the

victim was the initial aggressor was introduced.  (*Id.*  at 150-51, 208-24.)  Fourth,

---

[6] Petitioner's daughter did testify that victim choked her sister.  (RT at 145-48.)

ORDER – 16

many parties testified that the Petitioner was drinking.  (*See, e.g., id.* at 148, 219.)

Finally, while law enforcement officers did not testify that the victim got "what he

had coming," Petitioner does not provide any statements or declarations from law

enforcement officers that they intended to testify that the victim got what he

deserved.  Even without this last piece of evidence, there is little doubt that

sufficient testimony had been introduced that the victim had been a bad man.  (*See

id.* at 463) (where the state in its closing argument describes the victim as a bad

guy, who gets released from prison, and acts as a jackass).

Petitioner has failed to show ineffective assistance from trial counsel; as

such all of Petitioner's complaints of ineffective assistance from appellate for

failing to raise these issues on appeal is incapable of providing habeas relief.

In light of *Strickland*, this court cannot say that either trial or appellate

counsel provided ineffective assistance to Petitioner.  Habeas relief is denied as to

these claims.

*Denial of right to testify*

Next Petitioner alleges that he is entitled to habeas relief because trial

counsel denied his right to testify.  (Pet. at 6; Traverse at 12.)  His petition claims

that he "wanted to testify to fill in all the blanks and counsel said no and wouldn't

allow [him] to testify."  (Pet. at 6.)  The state admits that the defendant has the

ultimate decision whether or not to testify; however, it points out that Petitioner

fails to present evidence that he preserved this right.  (Ans. at 18.)  In his traverse,

Petitioner narrows his argument to the following two points: first, after being told that no witnesses would testify on his behalf, "it is reasonable to assume" that he would want to testify; second, that he sent a letter to his trial counsel informing her of his desire to testify.  (Traverse at 14.)  This letter is undated (*See id.* App. A), yet in his traverse Petitioner asserts that this letter was written on August 04, 2008. (Traverse at 13.)   Petitioner also alleges ineffective assistance of trial counsel in claims 2.1 and 6.4, and appellate counsel in claim 1.2.  (Pet. at 5, 6D.)

The Supreme Court has held that the right to be heard includes the right to testify in his own behalf.  *Rock v. Arkansas,* 483 U.S. 44, 49 (1987).  "Defense counsel's role is to advise the defendant whether he should take the stand, but the ultimate decision belongs to the defendant."  *United States v. Hover,* 293 F.3d 930, 934 (6th Cir. 2002).  "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or not inform the court of his desire to do so."  *United States v. Pino-Noriega*, 189 F.3d 1089, 1095 (9th Cir. 1999) (quoting *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir. 1993)).  If a defendant remains "silent in the face of his attorney's decision not to call him as a witness," he waives his right to testify.  *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993).

In this case, Petitioner failed to testify and did not notify the court of his desire to do so.  Petitioner acknowledges that waiver may be inferred from conduct and is presumed from defendant's failure to testify or notify the court.  (Traverse

ORDER – 18

at 13.)  This court may not grant relief on the assumption that Petitioner wanted to testify.  Petitioner also alleges that his undated letter fulfills the requirements "to insist[] on testifying" set forth by *Pino-Noriega*.  (Traverse at 14.)  This letter is inadequate to serve this purpose.  Petitioner fails to establish when the letter was written; this court cannot assume it was written prior to the conclusion of trial.

Petitioner also fails to show that his counsel was ineffective for not calling him as a witness.  Trial counsel may have had a tactical reason not to call the Petitioner and defense counsel was acting within her role to advice the client whether he should testify.  *Hover,* 293 F.3d at 934.  Petitioner fails to establish that trial counsel prevented him from testifying, or that her choice not to have the Petitioner testify was unreasonable.  Habeas relief from this ground is denied.

*Petitioner was denied the opportunity to confront the witnesses against him*

Petitioner's "Confrontation Clause" argument arises from the state's inability to locate the victim and the trial court's ruling against granting a continuance until the victim could be located.  (Traverse at 16.)  It does not involve the denial of Petitioner's right to confront a witness against him.  Petitioner also claims that prejudicial hearsay was admitted which denied his right to confrontation.  (Pet. at 6T.)  The state responds that the trial court denied the admission of any testimonial out of court statements and Petitioner fails to identify any hearsay statements that were admitted without the right of confrontation.  (Ans. at 24.)

ORDER – 19

This discussion pertains to the following original claim numbers: 13 (Petitioner denied opportunity to question the victim); 14 (court admitted prejudicial hearsay that could not be cross examined). The following errors of trial counsel: 4 (not asking for a continuance to allow bench warrant to secure and confront the victim); 2.3 (not securing "witness/victim"); 2.8 (not securing a continuance when district attorney declared that the victim was not available); and 6.10 (failing to secure victim). Finally, the following errors of appellate counsel: 1.4 (not raising trial counsel's failure to ask for a continuance to allow bench warrant to issue to secure and confront the victim); 1.11 (not raising trial counsel's failure to allow Petitioner to confront victim); 1.12 (not raising prosecutorial misconduct in making victim unavailable). (Pet. at 5-5A, 6-6A, 6R-6T.)

The Confrontation Clause allows a defendant to confront the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." *Davis v. Alaska*, 314 U.S. 308, 315-16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, at 123 (3d ed. 1940)) (emphasis in original).

In this case, the victim did not testify at trial. As such, the victim was not a witness and the Confrontation Clause does not apply. Petitioner also fails to identify in the record any inappropriately admitted hearsay statements. Petitioner has not presented an actionable basis for federal habeas relief for this claim.

ORDER – 20

Petitioner also fails to establish that his counsel gave him ineffective assistance by failing to secure the victim for trial.  Petitioner acknowledged that "it was no secret that the 'victim' was doing everything he could to avoid testifying." (Traverse at 16-17.)   Furthermore, the court had already issued a warrant for the victim's arrest for his failure to "honor" his subpoena.  (RT at 370-71.)  Eight days after the issuance of the warrant, the court held an evidence code § 402 hearing where district attorney office employees, sheriff department officers, and a parole agent testified about their efforts to locate and bring the victim to testify.  (*Id.* at 394-427.)  The trial court ruled that adequate due diligence had been made to locate the victim; however, it decided against admitting the victim's statements because of the inability to cross examine the victim.  (*Id.* at 446-47.)  Petitioner fails to show that his trial counsel's failure to request a stay and a second bench warrant provided ineffective assistance of counsel.  Given the victim's desire to avoid testifying, along with an existing warrant for his arrest, it is unlikely that a second warrant would have produced the victim.  Neither ground provides an adequate basis for habeas relief; Petitioner's request for habeas relief from this ground is denied.

ORDER – 21

*Prosecutorial misconduct*

Petitioner consolidates original claims 5, 11, and 15 into this claim. (Traverse at 5.)  Claims 5 and 11 relating to the malice portion of mayhem are procedurally barred.  Accordingly, these can no longer provide a basis for ineffective assistance of counsel.  Grounds 1.3, 1.7, 1.9, 2.2, and 8 are also procedurally barred.  (Pet. at 5, 6H.)  This leaves claim 15 along with the ineffective assistance of counsel claims 1.8, 2.6, and 9.  (Pet. at 5, 6I-6J, 6U-6V.) In this ground, Petitioner claims the existence of prosecutorial bias because the District Attorney did not approve his desired plea agreement.  (Traverse at 15.) The state responds that Petitioner's allegation that the District Attorney was biased because he allegedly stopped an informal "hallway" deal is insufficient to demonstrate prosecutorial vindictiveness.  (Ans at 20-21.)

Prosecutors are prohibited from proceeding under circumstances that suggest a realistic likelihood of vindictiveness. *Blackledge v. Perry*, 417 U.S. 21, 27 (1974).  It is necessary to prove that the prosecutorial conduct would not have occurred "but for" the prosecutor's hostility. *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982.)

Here, Petitioner fails to present evidence showing a likelihood of vindictiveness.  Petitioner first alleges that the "respondent incorrectly state[d] . . . that the Deputy District Attorney Linden never made an offer for seven years." (Traverse at 15.)  This allegation is contradicted by the record.  Defense counsel

ORDER – 22

attached a declaration to her to her motion to recuse the district attorney's office

stating "Deputy District Attorney Jay Linden indicated in chambers that the case

'looked' like an assault worth about 7 years, but no offer was extended."  (CT at

132.)  Defense counsel confirms this on July 26, 2004 when she states "[t]here was

no offer made by the District Attorney's office.  I made that clear:  There was not

an offer that was then later withdrawn."  (RT at 8.)  Next, Petitioner alleges that

the District Attorney was not amenable to the seven year offer.  (Traverse at 15.)

Petitioner's citation to the Clerk's Transcript does not support his allegation.  Both

of these factors are not sufficient to demonstrate that but for the prosecutors

vindictiveness, Petitioner would have been charged differently.  Petitioner fails to

demonstrate that the prosecutors conduct was either contrary to, or an

unreasonable application of federal law and Petitioner's habeas relief stemming

from this ground is denied.

*Failure to disqualify judge*

Petitioner cancelled his sixth claim.  (Traverse at 16.)  Accordingly, the

following ineffective assistance of counsel claims will be cancelled: 1.6, 1.13 and

2.5.  (Pet. at 5-5A.)

*Insufficiency of the evidence*

Next, Petitioner alleges that he is entitled to habeas relief because the jury

had insufficient evidence to convict him of mayhem.  (Pet. at 6W.)  Petitioner

originally presented this as his sixteenth claim.  (*Id.*)  As support, he states that

there was no evidence that he fired the shot maliciously.  (*Id.*)  The state responds that asking for "protection", ensuring that the gun was loaded, and firing it at the victim's face from a distance of 8-12 feet causing permanent injury to the victim's eyesight is sufficient to show that the Petitioner acted with malice.  (Ans. at 30.)  In his traverse, Petitioner responds by claiming that the California Court of Appeal opinion contradicted clearly established federal law by compartmentalizing Petitioner's case.  (Traverse at 19.)

Federal habeas corpus relief is available only if no rational trier of fact, viewing the evidence adduced at trial in the light most favorable to the prosecution, could have found proof of guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).

Here, Petitioner fails to show that the evidence presented at trial was insufficient to support conviction.  Petitioner's traverse introduces a large number of additional factors that in his opinion "should dispel that there was sufficient evidence to convict the petitioner of mayhem."  (Traverse at 21.)  However, providing additional evidence is not the appropriate way to measure the

ORDER – 24

sufficiency of the evidence.  This court does not evaluate mitigating factors and attempt to balance the evidence presented.  The record shows that the jury had the definition for malice in the jury instructions.  (*See* CT at 553.)  The evidence presented was sufficient to show that the jury had a basis to find the defendant guilty of every element of mayhem.  Viewed in light of *Jackson,* the decision is not based on an unreasonable determination of the facts from the evidence presented in the state court proceeding.  Petitioner's claim for Habeas relief is denied.

*Cruel and unusual punishment*

This claim, originally presented as Petitioner's seventeenth claim is procedurally barred.

*Cumulative error*

Petitioner cancelled  his eighteenth claim.  (Traverse at 23.)

*Trial court abused its discretion in not granting Petitioner's new trial motion based on newly discovered evidence*

Petitioner's final claim arises from the twelfth claim in the original petition. In his traverse, Petitioner consolidates this with claim one, however, the portion of this claim related to the trial court's alleged abuse of discretion will be discussed independently.  This discussion also includes the very similar claim 1.10 (trial court abused its discretion in denying new trial motion regarding newly discovered evidence).

ORDER – 25

In this claim Petitioner views the arrest of the victim as "newly discovered evidence." (Pet. at 6Q.) With this new evidence, Petitioner intends to establish that the victim was drinking and have the victim "tell the jury whether he was holding the bottle in his hand, if it was raised, or if he had dropped the bottle into the El Camino." (*Id.* at 6P.) The state responds that the standard for newly discovered evidence is governed by state law, and is beyond the reach of a federal habeas court. (Ans. at 25-26.) It continues that the trial court's decision was correct because the petitioner failed to meet his burden under the statute. (*Id.* at 26.) Petitioner's traverse reaffirms his statements in the petition. (Traverse at 17.)

Here, Petitioner fails to establish how his federal constitutional rights were denied. While Petitioner does allege that the trial court acted "in violation of equal protection, fair trial, cruel and unusual punishment, and Due Process under the Fifth, Sixth, Eight, and Fourteenth Amendments of the U.S. Constitution" along with various portions of the California State Constitution, this ground not capable of providing relief because he does not show how these rights were implicated. (See Pet. at 6O.) Additionally, Petitioner's sole citation to a federal case does not provide any guidance to the issue in this claim. In *U.S. v. Agurs,* 427 U.S. 97 (1976), the Court held that the prosecutor's failure to provide a victim's criminal record to the defense did not deprive the respondent of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment. This case fails to support Petitioner's contention that the trial court abused its discretion in not granting a

ORDER – 26

new trial.  Accordingly, Petitioner has failed to identify a violation of federal law capable of providing him with habeas relief.  Because the trial court did not err, appellate counsel did not err in failing to bring this claim.  Petitioner's requests stemming from this ground is denied.

### III. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims.  The clerk is directed to enter judgment consistent with this order.

Dated this 1st day of June, 2009

JAMES L. ROBART
United States District Judge

ORDER – 27